IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Ricky L. Smith,<br><br>      Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart,<br>Commissioner of Social Security,<br><br>      Defendant. | Civil Action No. 6:04-21956-HFF-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on February 7, 2003, alleging that he became unable to work on April 2, 2001 (later amended to January 27, 2003). The application was denied initially and on reconsideration by the Social Security Administration. On September 22, 2003, the plaintiff requested a hearing. The

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

administrative law judge, before whom the plaintiff, his attorney, and a vocational expert appeared, considered the case *de novo*, and on April 12, 2004, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 8, 2004. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)  The claimant's Post-Traumatic Stress Disorder, degenerative joint disease of the left knee, and saccular bronchiectasis are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> (4)  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6)  The claimant has the residual functional capacity to perform medium work with the following additional limitations: No climbing, crawling, or kneeling; no concentrated exposure to lung irritants; no constant, fine manipulation with his dominant hand; and infrequent exposure to the general public. He would also be limited to simple, repetitive 1-2 step tasks in a low stress, non-sequential production setting.
>
> (7)  The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

(8) The claimant is an "individual of advanced age" (20 CFR § 404.1563).

(9) The claimant has "more than a high school education" (20 CFR § 404.1564).

(10) The claimant has no transferable skills (20 CFR § 404.1568).

(11) The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 404.1567).

(12) Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.15 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a food preparer (This is medium, unskilled work with 500,000 jobs existing in the national economy (D.O.T. #317.687-010)); or a night watchman (This is medium, unskilled work with 400,000 jobs existing in the national economy (DO.T. 372.687-038)).

(13) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## EVIDENCE PRESENTED

The plaintiff was born on September 11, 1948; he was 54 years old at the alleged onset date of disability and 55 years old on the date of the Commissioner's "final decision" (Tr. 27-28, 50). He has a high-school degree as well as two Associate of Science degrees (Tr. 60, 380), and he has past work experience as a computer engineer and software engineer (Tr. 68-75).

3

*Medical Evidence*

On February 27, 2002, the plaintiff presented to the Veterans Administration Medical Center ("VA") on an emergency basis with complaints of post-traumatic stress disorder ("PTSD") related to his military service and a request for psychiatric treatment after relocating from New Mexico. The plaintiff reported increased nightmares, flashbacks, and startled responses. He had normal speech, anxious affect, mostly linear and goal directed thoughts, good insight and judgment, and grossly intact cognition. The plaintiff was diagnosed with PTSD and assigned a Global Assessment of Functioning ("GAF") score of 39, indicating some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking or mood (Tr. 200-03).

On March 5, 2002, the plaintiff presented to the VA, where Roberta McCoy, R.N., found clear lungs and noted that he walked two miles a day. On April 3, 2002, the plaintiff presented to the VA to establish psychiatric treatment. He reported a past medical history that included diabetes, removal of a left lung tumor, hypertension, migraine headaches, and knee problems. The plaintiff reported anger, sleep problems, avoidance, depression, hypervigilance, difficulty concentrating, problems with social interaction, feelings of isolation, intrusive thought, physiological reactivity, and restricted affect. He was diagnosed with PTSD, assigned a GAF score of 55 (indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning), was referred for PTSD group therapy, and medication management (Tr. 190-95, 198).

On April 4, 2002, the plaintiff presented to the VA for a dietetic consultation complaining of obesity and poorly controlled glucose levels. He was advised to avoid concentrated sweets and to increase activity as tolerated (Tr. 188-89). On May 12, 2002, the plaintiff presented to the VA to establish a relationship with Dr. Neil A. Kline for treatment of his PTSD. Dr. Kline diagnosed PTSD and continued the plaintiff's previously

prescribed Paxil (anti-depressant), Serzone (anti-depressant), and Ativan (anti-anxiety) (Tr. 186).

On May 20, 2002, the plaintiff presented to the VA to establish primary care with Luzviminda Constantino, N.P.  The plaintiff reported that he walked at least one mile per day, two to four times per week.  The plaintiff was alert and oriented and had clear lungs. Nurse practitioner Constantino assessed hypertension, hyperlipidemia, obesity, right shoulder pain, asthma, and PTSD by history (Tr. 178-82).

On June 11, 2002, the plaintiff presented to the VA with complaints of erratic glucose levels and elevated weight.  Kathryn A. Griver, a dietician, provided the plaintiff with oral and written instructions on maintaining a proper diet, decreasing snacking and increasing activity (Tr. 174-75).

On July 5, 2002, the plaintiff reported to the VA that Ativan was not helping his symptoms, but his "other medications [were] okay."  Dr. Kline discontinued the plaintiff's Ativan, continued Paxil and Serzone without change, and added Klonopin (anti-anxiety) (Tr. 166).

On July 26, 2002, the plaintiff complained to the VA of bilateral knee pain.  Dr. Charles Goldberg found the plaintiff had clear lungs and assessed diabetes mellitus, under good control, high blood pressure, normal lipid levels, asthma with no consistent pattern, and knee pain likely related to degenerative joint disease.  Dr. Goldberg increased the plaintiff's dose of hydrochlorothiazide (HCTZ) for high blood pressure and continued prescriptions for Fosinopril and Atenolol for high blood pressure and Naproxen for knee pain (Tr. 160-61).

On August 23, 2002, the plaintiff presented to the VA for follow-up to complaints of hypertension.  The plaintiff reported "feeling good" without side effects after the increase of HCTZ.  Kathryn Schreiber, R.N., assessed controlled hypertension and continued the plaintiff's medical regimen (Tr. 155-56).

On August 26, 2002, the plaintiff participate in a psychological group therapy session at the VA and learned anger management and relaxation exercises (Tr. 154).

On September 16, 2002, and September 30, 2002, the plaintiff participated in group therapy at the VA. Dr. Jeffrey Matloff noted that the plaintiff's emotional intensity level was reduced with stress management and relaxation exercises (Tr. 150, 152).

On October 4, 2002, Dr. Kline indicated that he treated the plaintiff for PTSD on three occasions. He also indicated that the plaintiff's prognosis was guarded and that his PTSD, anxiety, depression, and insomnia impaired his function in all spheres of living. He noted that the plaintiff poorly handled stress of any magnitude greater than subsistence, and experienced poor concentration when anxious. He also noted that while the plaintiff's medications helped his symptoms, they left him drowsy and unable to perform work adequately (Tr. 149).

On October 8, 2002, the plaintiff again participated in psychological group therapy at the VA. Dr. Matloff noted that cognitive reframing and processing techniques were introduced to the group, which the plaintiff appeared to appreciate (Tr. 148).

On October 11, 2002, the plaintiff attended a pulmonary sleep study consultation at the VA after complaints of sleep apnea. Alfred Agbulos, a certified respiratory therapist technician, noted a history of hypertension, obesity, and prolonged PTSD which contributed to the plaintiff's symptoms. He found mild obstructive sleep apnea syndrome, and recommended trial CPAP (continuous positive airway pressure) treatment, weight reduction, and avoidance of alcohol and sedatives (Tr. 146).

On October 21, 2002, the plaintiff presented to the VA again for psychological group therapy. Dr. Matloff noted that the plaintiff received some benefit from a stress management exercise consisting of deep breathing, meditation, and stretching (Tr. 142). At a therapy session on October 28, 2002, Dr. Matloff noted again that relaxation techniques were helpful to the plaintiff (Tr. 137).

On October 31, 2002, the plaintiff reported that Paxil and Clonazepam relaxed him and provided pain relief, Albuterol (which he used every few months) relieved his asthma symptoms, and he was satisfied with his CPAP treatment. He also reported that he walked one mile per day and that his knee pain was adequate controlled. Dr. Goldberg noted that the plaintiff had clear lungs and assessed neck pain, controlled diabetes mellitus, hypertension, controlled sleep apnea, and knee pain. He continued prescriptions for Metformin (diabetes), Glyburide (diabetes), Fosinopril, HCTZ, and Atenolol (Tr. 135-36).

On November 18, 2002, the plaintiff again presented for group therapy at the VA, where relaxation and guided meditation lowered his emotional intensity levels (Tr. 131).

On November 20, 2002, the plaintiff presented to the VA and reported that he was using his CPAP with positive results. Susan Hacklander, a registered respiratory therapist, instructed the plaintiff to continue using the CPAP (Tr. 130).

On December 31, 2002, the plaintiff presented to the VA with complaints of erratic glucose levels and elevated weight. Ms. Griver provided oral and written instructions regarding diet improvement and advised the plaintiff to decrease snacking and increase his activity (Tr. 123).

On March 18, 2003, Dr. Herbert Gorod, a State agency physician, completed a psychiatric review technique form on which he found that the plaintiff had mild PTSD resulting in moderate restrictions of activities of daily living; mild difficulties in maintaining social functioning, concentration, persistence, and pace; and no episodes of decompensation (Tr. 204, 214). On a mental residual functional capacity assessment completed the same day, Dr. Gorod found the plaintiff was moderately limited in his ability to complete a normal workday and workweek, but was not significantly limited in his abilities to remember locations and work-like procedures; understand, remember, and carry out detailed or short and simple instructions; maintain attention and concentration; perform activities within a schedule; sustain an ordinary routine; work in coordination with others;

7

make work-related decision; interact appropriately with the general public; ask simple questions; accept instructions; get along with coworkers; maintain socially appropriate behavior; adapt to changes; be aware of hazards; travel to unfamiliar places; and set goals and make plans independently of others (Tr. 218-19).

On April 15, 2003, the plaintiff presented to Dr. Harriet Steinert for a consultative examination. Dr. Steinert found that the plaintiff was obese with full neck, extremity, and spinal ranges of motion and no problems with fine motor skills. She also found that the plaintiff's lungs were clear to percussion and auscultation. Dr. Steinert assessed morbid obesity, arthritis, diabetes, anxiety disorder, depression, asthma, hypertension and migraine headaches. On this same day, the plaintiff underwent a right knee x-ray, which was normal (Tr. 224-26).

On May 22, 2003, bilateral knee x-rays showed no evidence of fracture or dislocation, but there were loose bodies in the posterior left knee. A chest x-ray was normal (268-69).

On June 6, 2003, the plaintiff presented to Dr. Carol A. Denier of the VA and reported only slight improvement in his mental symptoms over the preceding 13 years. Dr. Denier found that the plaintiff was alert and oriented, and had appropriate affect congruent with thought content, dysphoric mood, somewhat tangential thought processes, normal cognition, and fair insight and judgment. Dr. Denier assessed PTSD and major depressive disorder (Tr. 315-17).

On June 12, 2003, the plaintiff presented to the VA with complaints of anxiety and anger. Dr. Denier noted that the plaintiff was alert and oriented with dysphoric mood, normal cognition, fair insight, and good judgment. Dr. Denier continued therapy and medication regimens and assigned a GAF score of 50 (Tr. 311-12).

On June 19, 2003, the plaintiff complained of migraine headaches at the VA urgent care center. The plaintiff reported that prior to arriving, his head pain was 10/10, but

that upon examination it was only 3/10. The plaintiff was assessed with migraine headache and received a prescription for Vicodin (for moderate to severe pain) (Tr. 305-07). On this same day, the plaintiff presented for psychotherapy. He did not report medication side effects. Dr. Denier assessed severe PTSD and recommended continued psychotherapy and medication (Tr. 304).

On July 3, 2003, the plaintiff presented to the VA for psychotherapy with complaints of trauma-related nightmares and disrupted sleep. The plaintiff did not report any medication side effects (Tr. 296-97).

On July 11, 2003, the plaintiff presented to Dr. Cashton B. Spivey for a consultative psychological examination. The plaintiff reported that he could bathe and dress himself, cook, read, and perform simple math. Dr. Spivey administered the Mini-Mental State Examination, which was normal but reflected a mild-to-moderate cognitive impairment. The plaintiff was only able to recall one of three objects at five minutes, and was unable to reproduce a drawing. However, he was able to perform serial sevens, accurately restate a sentence, follow a three-step command, and demonstrate a fair general fund of information. He had fair judgment and average intelligence. Dr. Spivey diagnosed a major depressive episode, and assigned a GAF score of 45 (Tr. 227-30).

On July 14, 2003, the Department of Veterans Affairs issued a decision granting the plaintiff veteran's disability benefits based upon PTSD (70 percent disabling), saccular bronchiectasis with lower lobectomy (30 percent disabling), and chondromalacia (10 percent disabling in each knee) (Tr. 235-41). The decision granted entitlement to individual unemployability because the plaintiff was "unable to secure or follow a substantial gainful occupation as a result of service-connected disabilities." The decision granted the plaintiff a higher evaluation than a previous decision from January 15, 2003 (Tr. 251) awarding benefits due to PTSD (Tr. 237-38). The decision also granted the plaintiff the same rating as the previous decision for saccular bronchiectasis with lower lobectomy due

to limited ability to walk for more than half a mile without shortness of breath, and the same rating for chondromalacia in both knees due to limitations on the ability to climb stairs, squat, kneel, crawl or stand (Tr. 239-40).

On July 17, 2003, Dr. Denier found that the plaintiff was alert and oriented and had dysphoric mood, pressured speech, circumstantial thought processes, normal cognition, fair insight, and good judgment. She assessed PTSD and continued the plaintiff's relaxation training and medication regimen (Tr. 293-94).

On July 25, 2003, Dr. Jeffrey J. Vidic, another State agency psychological consultant, completed a psychiatric review technique form. Dr. Vidic found major depression and PTSD in partial remission with medications and treatment (Tr. 340, 342). He found that the plaintiff had mild restriction to his activities of daily living, moderate difficulties in maintaining social functioning, concentration, persistence or pace, and no episodes of decompensation (Tr. 347). In a mental residual functional capacity assessment completed this same day, Dr. Vidic found moderate limitations on the plaintiff's ability to understand, remember and carry out detailed instructions; maintain attention and concentration; work in coordination with others, interact appropriately with the general public; and get along with co-workers. However, he found that the plaintiff was not significantly limited in the remaining 14 mental activities listed in the assessment (Tr. 333-34).

On August 21, 2003, the plaintiff reported that his medications helped him; in particular, that they decreased his nervousness and daytime flashbacks. He also reported hyperarousal and hypervigilance, anxious mood, irritability, and intermittent depression. Dr. Michael G. Huber noted that the plaintiff was overweight and had anxious mood, congruent affect with nervous laughter intermittently, and fair memory and concentration. Dr. Huber diagnosed severe PTSD, symptoms of major depressive disorder

in partial remission, and alcohol dependence in partial remission. Dr. Huber assigned a GAF score of 45, and prescribed Seroquel (anti-psychotic) and Serzone (Tr. 289-91).

*Administrative Decision*

The ALJ followed the five-step sequential evaluation process to determine that the plaintiff was not disabled. At the first step, he found the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (Tr. 23, Finding 2). At the second step, the ALJ found that the plaintiff suffered from an impairment or a combination of impairments considered "severe" (Tr. 23, Finding 3). At the third step of the sequential evaluation, however, the ALJ found that the plaintiff's impairments did not meet or medically equal a listed impairment (Tr. 23, Finding 4).

At the fourth step, the ALJ assessed the plaintiff's residual functional capacity (RFC) during the insured period and determined that he retains the RFC to perform "medium work with the following additional limitations: no climbing, crawling, or kneeling; no concentrated exposure to lung irritants; no constant, fine manipulation with his dominant hand; and infrequent exposure to the general public . . . limited to simple, repetitive 1-2 step tasks in a low stress, non-sequential production setting" (Tr. 23, Finding 6). In reaching this conclusion, the ALJ considered the relevant medical evidence, all medical opinions, and the hearing testimony regarding the plaintiff's symptoms and limitations, including the plaintiff's subjective complaints. Based upon this RFC, the ALJ found that the plaintiff's impairments precluded him from performing his past relevant work activity (Tr. 23, Finding 7). At the fifth step of the sequential evaluation, the ALJ found that, although the plaintiff could not perform the full range of medium work, there were a significant number of jobs in the national economy that he could perform (Tr. 23, Finding 12). Therefore, the ALJ found that the plaintiff was not under a "disability" as defined by the Social Security Act (Tr. 24, Finding 13).

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **ANALYSIS**

The plaintiff alleges disability commencing January 27, 2003 (Tr 50-54, 379-80), due to PTSD, arthritis, asthma, sleep apnea, and neck, shoulder, and arm pain (Tr. 54). The ALJ found the plaintiff not disabled at the fifth step of the sequential evaluation (Tr. 23). The plaintiff contends that the ALJ erred by failing to consider the rating of total disability by the Department of Veterans' Affairs. The plaintiff also argues that the ALJ erred by failing to find that his impairments equaled the severity of a listed impairment. Further, the plaintiff argues that the ALJ erred in rejecting the opinion of his treating physician. Finally, the plaintiff argues that the ALJ improperly assessed his credibility.

### *VA Rating*

The plaintiff contends that the ALJ erred by failing to consider the Veteran's Administration (VA) rating of total disability. This argument is without merit.

Contrary to the plaintiff's allegation, the ALJ considered not only the disability rating assigned by the VA (Tr. 15) but also the findings and opinions of the VA doctors upon which the VA rating was based (Tr. 16-19). However, the ALJ was not bound by the VA's assessment of the plaintiff's disability. 20 C.F.R. §404.1504; *see also DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) (the determination of another governmental entity is not binding on the Social Security Administration). There is substantial evidence to support the finding of the ALJ here that the plaintiff retained the ability to perform medium work with limitations. Accordingly, the plaintiff's argument is without merit.

### *Listed Impairment*

A disability under the Listing is a presumptive disability based upon medical evidence which establishes the existence of impairments which are considered severe enough to prevent a person from performing any gainful activity. The regulations state that

upon a showing of a listed impairment of sufficient duration, "we will find you disabled without considering your age, education, and work experience." 20 C.F.R. §404.1520(d). The question becomes whether or not there is substantial evidence to support the finding of the ALJ that the plaintiff's impairment did not constitute a listed impairment. This court finds that the ALJ's finding is supported by substantial evidence.

To establish that his impairment "matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). It is the plaintiff's burden to demonstrate that his impairments were presumptively disabling pursuant to the Listings. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Here, the plaintiff contends that the ALJ erred in failing to find that he met Listing 12.06, the listing regarding "anxiety related disorders" which provides in pertinent part:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsession or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied:
>
> A.   Medically documented finding of at least one of the following:
>
>    1.   Generalized persistent anxiety accompanied by three out of four of the following signs:
>       a.   Motor tension; or
>       b.   Autonomic hyperactivity; or
>       c.   Apprehensive expectation; or
>       d.   Vigilance and scanning; or
>    . . .

15

>       5.  Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
> AND
>
> B.  Resulting in at least two of the following:
>     1.  Marked restriction of activities of daily living; or
>     2.  Marked difficulties in maintaining social functioning; or
>     3.  Marked difficulties in maintaining concentration, persistence or pace; or
>     4.  Repeated episodes of decompensation, each of extended duration.
> OR
>
> C.  Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Part 404, Subpt. P, App. 1., §12.06.

The plaintiff cites the following as examples of the enumerated symptoms in the record evidence:

> • Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: Motor tension, autonomic hyperactivity, apprehensive expectation, vigilance and scanning (Tr. 190, 192).
>
> • Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress (Tr. 200, 203, 293).
>
> • Marked difficulties in maintaining social functioning (Tr. 149).
>
> • Marked difficulties in maintaining concentration, persistence or pace (Tr 149, 214, 219, 229, 304, 312, 318).

These entries are from medical notes created between February 27, 2002, through July 17, 2003 (pl. brief 17-19).

As argued by the defendant (Tr. 29-30), the plaintiff's PTSD does not meet any of the "B" or "C" criteria of Listing 12.06. Dr. Gorod found moderate restrictions of daily activities and mild difficulties in maintaining social functioning, concentration, persistence and pace, and no episodes of decompensation (Tr. 204, 214). He also found that the

16

plaintiff was not significantly limited in his ability to maintain concentration, work in coordination with others, interact with the public, get along with co-workers, or maintain socially appropriate behavior (Tr. 218-19). Dr. Vidic found mild restrictions to activities of daily living, moderate difficulties in maintaining social functioning, concentration, persistence or pace, and no episodes of decompensation (Tr. 347). He found moderate limitations of the plaintiff's ability to maintain attention and concentration, work in coordination with others without being distracted, interact with the general public, and get along with co-workers (Tr. 333-34). None of these findings indicate marked limitations in any of the "B" criteria nor do they indicate that the plaintiff is unable to function independently outside the area of his home as required for the "C" criteria.

***Treating Physician's Opinion***

The plaintiff contends that the ALJ erred by rejecting the opinion of Dr. Neal Kline, one of his treating physicians, because it "departs substantially from the rest of the evidence of record." This argument is without merit.

Normally, the opinion of a treating physician "is entitled to great weight for it reflects an expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). In *Craig v. Chater,* however, the Fourth Circuit Court of Appeals stated that "precedent does not require that a treating physician's testimony 'be given controlling weight'. . . . [I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." 76 F.3d 585, 590 (4th Cir. 1996). If not entitled to controlling weight, the value of the opinion must be weighed, and the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of

17

record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. §404.1527(d)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. Social Security Ruling 96-2p.

Here, the plaintiff visited Dr. Kline at the VA only three times before he opined that the plaintiff's "PTSD, with significant anxiety, depression, and insomnia, impairs function in all spheres of living, both at home and at work" (Tr. 149). The ALJ considered not only the brevity of the treating relationship with Dr. Kline, but also the fact that the plaintiff was actually working at the time of Dr. Kline's opinion in October 2002 (Tr. 18). According to the plaintiff, he worked for the Defense Acquisition/Warfare Center from February 2002 through January 2003 (Tr. 68-69, 382). Indeed, Dr. Kline's opinion was inconsistent with the plaintiff's own conduct, but also with the medical evidence from other VA physicians who treated the plaintiff and from examining physicians (Tr. 202, 204, 214, 228-29, 294, 311, 316, 333-34). Moreover, Dr. Kline's opinion is not a medical finding, and his opinion cannot resolve the resolve the ultimate issue of disability, which is reserved for the Commissioner. *Thomas v. Celebrezze*, 331 F.2d 541, 545-46 (4th Cir. 1964). Accordingly, this court agrees that Dr. Kline's opinion is not entitled to controlling weight because it is not supported by the substantial evidence in the record. *See* 20 C.F.R. §404.1527(d)(2).

### *Plaintiff's Credibility*

The plaintiff also contends the ALJ erred in failing to find his testimony credible because he continued to work after he was diagnosed with medical conditions and because his total inability to work is not supported by the medical record. This argument is without merit.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

Here, the ALJ discussed the plaintiff's allegations regarding the severity of his symptoms and the extent of his limitations. He found that the plaintiff's allegations were unsupported by the medical evidence of record (Tr. 18). He specifically noted:

> The claimant testified that the primary impairment preventing him from working is his mental condition. However, the record reveals that this allegedly disabling impairment was present at approximately the same level of severity prior to the alleged onset date. In fact, the claimant was diagnosed with this condition in the 1990's and continued working until 2003. Although he reported a 4 week hospitalization for this condition, this occurred prior to his onset date. The fact that the impairment did not prevent the claimant from working prior to 2003 strongly suggests that it would not currently prevent the claimant from working.
>
> The claimant further testified that he suffered migraine headaches daily when he was working due to the mental pressure, yet he kept working in spite of the headaches. Again, the fact that the claimant experienced regular, severe headaches, but was able to continue working suggests that the claimant's condition would not currently prevent work, especially in light of the claimant's testimony that his headaches now occur only 1-2 times a week.

(Tr. 18).

Further, the plaintiff testified that his medications caused debilitating side effects; however, on two separate occasions in June and July 2003, Dr. Denier noted that the plaintiff did not report any side effects from medications prescribed for his mental impairment (Tr. 297, 304). The plaintiff reported that he walked one to two miles per day

(Tr. 179, 198). He had full strength, flexion, and extension in his left knee with 2+ deep tendon reflexes (Tr. 240), and bilateral knee x-rays showed no evidence of fracture or dislocation (Tr. 269). He had full neck, extremity joint, and spinal ranges of motion, and no problems with fine motor skills (Tr. 224). He consistently had clear lungs, and a chest x-ray was normal (Tr. 135-36, 161, 170, 180, 198, 224, 239, 268, 320, 324). He was consistently alert and oriented with normal speech and cognition, appropriate affect, linear and goal directed thoughts, and good insight and judgment (Tr. 202, 294, 311, 316). Lastly, it appears that the plaintiff's impairments responded well to treatment (Tr. 131, 135-37, 142, 150, 152, 166). Based upon the foregoing, the record supports the ALJ's finding that the plaintiff's testimony concerning the severity of his symptoms and the extent of his limitations was not entirely credible.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court concludes the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed.

s/William M. Catoe<br>
United States Magistrate Judge

October 31, 2005

Greenville, South Carolina